UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION
KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 12-107-ART |
| ) | |
| v. ) | |
| ) | |
| MICHAEL WALLI, et al., ) | **MINUTE ENTRY ORDER** |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On September 15, 2015, at 10:00 a.m., the Court held a hearing via teleconference to sentence Michael Walli, Sister Megan Rice, and Greg Boertje-Obed. Jeffrey E. Theodore represented the United States, Anna Lellelid-Douffet represented Mr. Walli, Judy Kwan and Thomas McConville represented Sister Rice, and Bobby E. Hutson, Jr. represented Mr. Boertje-Obed. Patricia Burns was the court reporter, and Tammy Dallas was the courtroom deputy.

During the hearing, the defendants confirmed that they had gone over the PSR with their attorneys. They stated that they understood that they had the right to be sentenced in person, and that they nevertheless wished to proceed via teleconference. The defendants confirmed that they had jointly made two objections to the PSR. Counsel for Sister Rice added one additional objection on behalf of all three defendants, namely to the PSR's use of the word "maliciously" to describe the defendants' actions at Y-12. The Court ordered that word stricken from the PSR. The Court then addressed the defendants' remaining objections.

I.

First, the defendants objected to the proposed restitution order. They pointed out that, because the Sixth Circuit issued a general mandate, this Court has jurisdiction to reconsider its previous restitution award de novo. The Court agreed that it had the jurisdiction to reconsider its order. *See United States v. Saikaly*, 207 F.3d 363, 369 (6th Cir. 2000) ("[O]n remand following a direct appeal, a district court can consider de novo any arguments regarding sentencing if the remand order does not limit its review."). Hence the Court told counsel to proceed to their arguments as to the restitution order itself.

The defendants first argued that, because the defendants have "all dedicated their lives to living in poverty," a restitution award was inappropriate. The Court asked defense counsel whether, under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A et seq., the Court could consider the defendant's ability to pay when determining the proper amount of restitution. Counsel admitted that the Act does not allow the Court to consider the defendant's financial circumstances.

The defendants also disputed the Court's previous factual findings, arguing that the government had not presented specific-enough evidence as to how much damage the break-in caused. The Court ordered the restitution award based on a detailed spreadsheet provided by the government, as well as the testimony of Brigadier General Johnson (Ret.), who corroborated the spreadsheet. As to the costs of the security guards, he testified that, "because there was a breach in the fence," Y-12 needed to "lock down the site and bring in additional personnel," specifically:

> The security and the canine personnel were -- after the incident occurred, then we had to keep people -- we had to keep security police officers on -- on the site longer than normal. So they normally work a 12-hour shift. We had to

2

> keep them on for another four hours as we determined what we were actually dealing with to patrol the site, secure the site, make sure there were no other threats out there. So it was additional patrolling and screening. We brought some people in and augmented our current patrols. When any type of incident occurs, we would lock down the site, and that requires us to bring additional people in. And then the canine, basically that's simply to do the patrolling of the ridge lines and the heavily wooded areas to determine exactly what we were dealing with.

R. 335 at 74.

Toward the end of his testimony, he said that all of the expenses included on the spreadsheet were "directly a result of the incident," that "those are all things that I would not have done, I would not have had to have done otherwise." R. 335 at 74. Thus, although the defendants contended that Y-12 might have had to pay some of the costs included in the restitution order even if the incident had not occurred, Johnson's testimony flatly refutes that contention. The defendants previously offered no evidence to contradict his testimony. And they offered no additional evidence during this hearing, either. Indeed, the Court previously characterized the figures in the spreadsheet as "completely reliable when taken through the scope of the General's testimony and the indicia of reliability that they have," and went on to note that "[t]here was no evidence presented to the contrary that it would cost more or less." R. 335 at 97. Given that the defendants presented no new evidence as to restitution, the Court's previous statements are as true now as they were then. Johnson testified—without contradiction—that none of the $52,953 would "have been spent if it was not for the intrusion[.]" R. 335 at 97. Thus, the Court noted, it seems that the defendants should pay that amount in restitution.

In response, the defendants pointed out that the Sixth Circuit's opinion rejected the suggestion that "a mere 'diversion of resources'—in the form of the guards' response to the

intrusion, rather than continuing to do what they were doing before—amounts to interference with the national defense." *United States v. Walli*, 785 F.3d 1080, 1086 (6th Cir. 2015). The court "answer[ed] that suggestion on its own terms" by pointing out that "responding to intrusions is what guards do, and thus not a diversion at all. None of the guards who responded to the defendants' intrusion were building bombs beforehand." *Id.* The opinion goes on to say that "so far as resources are concerned, guards are a sunk cost once hired (as these security guards were, by a private contractor) or assigned (as military police are). To say that these guards were diverted from their duties is like saying a pilot is diverted from his duties when he flies a plane." *Id.* Counsel for Mr. Walli suggested that "similar reasoning" should apply here and that, as a result, the Court should not order restitution.

The Court pointed out that, for three reasons, these statements from the Sixth Circuit do not suggest a different restitution amount. First, the Sixth Circuit affirmed the convictions for depredation of property and reversed only the convictions for sabotage. *Id.* at 1089 ("We reverse the defendants' convictions under 18 U.S.C. § 2155 [and] affirm their convictions under 18 U.S.C. § 1361.") Thus, the cited statements do not relate to the proper amount of restitution for the depredation-of-property convictions.

Second, and relatedly, the government's briefs before the circuit did not argue—at least in the argument section—that the defendants had committed sabotage because they forced Y-12 to hire supplemental security ex post. Indeed, the question before the circuit was whether the defendants "knew that [interference with the national defense] was practically certain to result" from their actions. *Id.* at 1084. That Y-12 would have to hire supplemental security to guard the hole while the workers repaired the hole was not something that the defendants could have known would result from their actions with

"practical[] certain[ty]." *Id.* Thus, there was little reason for the government to highlight the ex-post security guards in their briefs. But the question at the restitution stage is a different one. Defendants must compensate victims for more than just those losses that were "practically certain" to result. Instead, they must pay "the full amount of each victim's losses" that their conduct "proximately [caused.]" 18 U.S.C. § 3664; *Id.* § 3663A(a)(2); *see also United States v. Church*, 731 F.3d 530, 537–39 (6th Cir. 2013) ("When Congress enacted § 3663A as part of the Mandatory Victims Restitution Act (MVRA), its stated purpose was to ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society.") (internal quotation marks omitted). The circuit's statements—about whether the defendants could be reasonably certain that their actions would interfere with the national defense—thus have no bearing on the question presented here: the total losses that the American taxpayer had to pay in order to repair the damage that the defendants caused. *See United States v. Genschow*, 645 F.3d 803, 814 (2011) ("When destroyed property is unique or lacks a broad and active market, a court may look to the replacement cost to satisfy the [restitution] statute.").

Finally, it is not entirely clear that the circuit was talking about the guards who Y-12 employed after the incident to secure the area while the fence was repaired. Indeed, the circuit's opinion refers to "the guards who responded to the defendants' intrusion." 785 F.3d at 1086. But those guards—*i.e.*, the ones who responded initially—are not the guards whose costs the defendants must pay in restitution. The restitution award is for the costs (for the guards, carpenters, painters, and so forth) of repairing the damage caused by the intrusion. The award does not include the costs of "respond[ing]" to it. For these reasons, the Court

overruled the defendants' objection and imposed restitution in the amount of $52,953, to be imposed joint and severally on the defendants.

## II.

Second, the defendants objected to the proposed order of supervised release. They mostly argued that, because they have already served more prison time than they would have if the Court had initially sentenced them for the depredation convictions alone, the Court should not sentence them to any period of supervised release. They note that, under USSG § 5D1.1(b), the Court may decline to order a period of supervised release if it orders a term of imprisonment of one year or less. Sister Rice's guideline range is 4-10 months in prison and Boertje-Obed's range is 6-12 month. Thus, those two defendants argue, the Court need not impose supervised release. Walli's guideline range is 10-16 months in prison. He argues that, because he has served so much time in prison, the Court need not impose supervised release. The government, for its part, took a different tack, arguing that, because the defendants' "time served" would be greater than one year, the guidelines provide that the Court must impose supervised release in this case. *See* U.S.S.G. § 5D1.1(a)(2).

The Court first rejected the government's argument that the Court must impose supervised release. As the Court noted, it is unclear exactly what the defendants' sentence would have been if they initially had been sentenced for the depredation offense alone: specifically, it is unclear whether the sentence would have been for more than one year in prison or not. It is thus likewise unclear that the Court would have been required to impose supervised release if it had sentenced them only for the depredation conviction the first time around. That the defendants ended up spending two years in prison, then, might well have

been a result of the now-vacated conviction for sabotage. Thus, the Court rejected the argument that it must impose supervised release.

Next, the defendants and their attorneys gave allocutions, as did the government. Defense counsel asked the Court to sentence the defendants to time served with no period of supervised release. The government asked the Court to sentence the defendants to time served plus a within-guidelines period of supervised release.

The Court then went on to consider the parties' arguments as to supervised release in light of the sentencing factors set forth in § 3553. The Court noted that several of these factors—in particular, promoting respect for the law, deterrence, protecting the public, and avoiding unwarranted sentencing disparities—suggested that the Court should impose a term of supervised release. But the Court also noted that the defendants "are not the typical people that we supervise, even if they might have different agendas that the government would not like them to have." Thus, the Court decided that the defendants should be placed on two years of unsupervised supervision. The Court said that it would impose three conditions: that the defendants shall not commit any federal, state, or local crimes; that the defendants shall not enter any United States nuclear facility; and that the defendants shall report any arrest to the probation department. The Court said that it would not to impose the other standard conditions of supervised release. The defendants renewed their objections to any period of supervised release.

The Court ultimately sentenced the defendants to time served in prison plus a two-year period of supervised release that will be unsupervised. The Court added three conditions of supervised release: that the defendants shall break no federal, state, or local law; that the defendants shall not enter any United States nuclear facility; and that the

defendants shall report any arrests to the probation department. The courtroom deputy then read to the defendants their notice of their right to appeal. The defendants each confirmed that they understood their rights.

Accordingly, and for the reasons stated on the record, it is **ORDERED** as follows:

(1) The defendants' objections to the restitution award and supervised-release requirement are overruled.

(2) The defendants are each sentenced to time served in prison plus a two-year period of supervised release that will be unsupervised.

(3) As conditions of that supervised release, the defendants shall violate no federal, state, or local law; shall not enter any United States nuclear facility; and shall report any arrests to the probation department.

(4) A special assessment of $100 is imposed.

(5) The defendants are ordered to pay restitution in the amount of $52,953. That amount is imposed on the defendants jointly and severally.

(6) Within 72 hours—*i.e.* by 5 p.m. on Friday, September 18, 2015—the defendants shall report to the local probation office in their respective areas to sign the conditions of their supervised release.

This the 16th day of September, 2015.



Signed By:
**Amul R. Thapar**
United States District Judge

TIC: 75 mins.